AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
JAN 27 2020
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Rose Gold IPhone 5
Seized as FP&F No 2020565700008002
("Target Device")

Case No. 20MJ0347

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 8, United States Code § 1324 | Transport Illegal Aliens(a)(1)(A)(ii) and (v)(II) |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/2020

*Judge's signature*

City and state: San Diego, California

The Honorable Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*



# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

Rose Gold IPhone 5
Seized as FP&F No. 2020565700008002
("Target Device")

the ("**Target Device**"), as further described in Attachment(s) A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate(s) to the investigation and prosecution of Richard Jaramillo SIERRA, for attempting to transport and move illegal aliens within the United States. The **Target Device(s)** is/are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

**TRAINING AND EXPERIENCE**

4. I have been employed by the USBP since 2008, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle

aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions

set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On January 25, 2020, Border Patrol Agents J. Arevalo, BPA J. Ewers, R. Russell were conducting assigned duties in the El Cajon Border Patrol Station's area of responsibility. At approximately 11:11 AM, Agent Arevalo was parked on Forrest Gate Road when a concerned citizen approached him. The concerned citizen stated he had observed several individuals cross the United States/Mexico International Boundary and run towards a red Tahoe which was parked on a turnout near the Pacific Crest Trail.

12. Upon arriving at the turnout, where a red Tahoe was parked, Agent Arevalo observed several individuals attempting to conceal themselves by lying down inside the Tahoe. Agent Arevalo approached the rear passenger side of the Tahoe and asked the individuals inside to open the door. One individual opened the door and revealed a total of six individuals, later identified as material witnesses, Vicente CARMONA-Diaz, Erik HERNANDEZ-Lopez, Ivan Ramiro RIVERA-Rodriguez, Jose Roman SANDOVAL-Macias, Atilano TREJO-Guillen and Rodrigo MACIAS-Carrillo, lying down inside the Tahoe. Agent Arevalo identified himself as a Border Patrol Agent and conducted an

immigration inspection. CARMONA, HERNANDEZ, MACIAS, RIVERA, SANDOVAL and TREJO stated that they are illegally present in the United States and were not in possession of any immigration documents that would allow them to enter or remain in the United States legally. At approximately 11:15 AM, Agent Arevalo placed CARMONA, HERNANDEZ, MACIAS, RIVERA, SANDOVAL and TREJO, under arrest.

13. Border Patrol Agent J. Ewers responded to assist Agent Arevalo. As Agent Arevalo was searching the vehicle, an individual later identified as defendant, Ceasar Jessie SIERRA, walked up and stated that he was the owner of the red Tahoe and was in the area with some friends. A short distance away Agent Ewers encountered two individuals, later identified as defendants Richard Jaramillo SIERRA and Miriam RODRIGUEZ.

14. Agents J. Bringas and R. Russell questioned C. SIERRA regarding the six undocumented immigrants that were found in his vehicle. During questioning, Agent Arevalo and his canine partner conducted a non-intrusive air sniff/inspection of C. SIERRA's vehicle. Agent Arevalo's canine alerted to a small bag a white powdery substance found in the red Tahoe. At approximately 11:30 AM, Agent Russell placed C. SIERRA under arrest.

15. Agent Ewers turned his attention to R. SIERRA. R. SIERRA provided a similar story to that of C. SIERRA. R. SIERRA stated he had driven down from Los Angeles, California in the white Toyota Highlander that was parked nearby.

16. Agent Ewers approached the Toyota Highlander and observed several individuals lying down attempting to conceal themselves. Agent Ewers identified himself as a Border Patrol Agent and conducted an immigration inspection. All five individuals, later identified as material witnesses Oscar GONZALEZ-Dionicio, Vicente MARIANO-Telesforo, Ernesto MARTINEZ-Ponce, Martin TRUJILLO-Roman, and Angel Francisco BELMARES-Crispin, stated that they are citizens of Mexico without immigration documents which would allow them to enter or remain in the United States legally. At

approximately 11:40 AM, Agent Ewers placed BELMARES, GONZALEZ, MARIANO, MARTINEZ, TRUJILLO and under arrest. At approximately 11:50 AM, Agent Ewers Placed R. SIERRA and RODRIGUEZ under arrest.

17. After a search incident to arrest a rose gold IPhone 5 **("Target Device")** was discovered on Ricard Jaramillo SIERRA's person. R. SIERRA claimed ownership of this device. The device was seized as evidence.

18. The arrest location is approximately nine miles east of the Tecate, California Port of Entry and approximately seventy five yards north of the United States-Mexico International Border.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device(s)** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

24. Because the **Target Device(s)** were seized at the time of (SIERRA's) arrest and have been securely stored since that time, there is probable cause to believe that such

evidence continues to exist on the **Target Device(s)**. As stated above, I believe that the appropriate date range for this search is from **December 25, 2019 through January 25, 2020**.

25. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Subscribed and sworn to before me this __27th__ day of January, 2020.

Hon. Barbara L. Major
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Rose Gold IPhone 5
Seized as FP&F No. 2020565700008002
("Target Device")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone(s) described in Attachment(s) A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 25, 2019 through January 25, 2020:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.